In the Matter of MAURICE A. LYNCH, an Attorney, Respondent.

First Department, July 2, 1924.

Attorney and client — disciplinary proceedings — attorney was engaged by woman to appeal from judgment of conviction of disorderly conduct — part of stipulated fee was paid — attorney took no steps to perfect appeal but after complaint was made he endeavored unsuccessfully to secure new trial — woman was pardoned after investigation by district attorney on ground that she was convicted on false testimony — attorney suspended for one year.

An attorney at law is suspended for one year for professional misconduct, where it appears that he was engaged by a woman to prosecute an appeal from a judgment convicting her of disorderly conduct, that a part of the stipulated fee was paid the attorney but he took no steps to perfect the appeal and did

not attempt to secure a new trial until after a complaint had been made against him, and that the woman was pardoned by the Governor after an investigation by the district attorney who reported that she was convicted on false and perjured testimony.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*Cantwell & Meara* [*John A. Meara* of counsel], for the respondent.

CLARKE, P. J:

The respondent was admitted to practice as an attorney and counselor at law at the March, 1909, term of the Appellate Division of the First Department.

The petition charges that the respondent has been guilty of misconduct as an attorney as follows: On February 1, 1923, a certain woman was arrested charged with disorderly conduct. She was tried in the City Magistrate's Court, Borough of Manhattan, Ninth District, before Magistrate Marsh on February second, found guilty and placed on probation for six months by the magistrate. On February 13, 1923, claiming that she was innocent of the charge made against her, that she had been mistaken for another woman, and that by reason of the judgment of conviction and the record made against her she had been greatly outraged, she consulted the respondent. It was then agreed that he would take an appeal from the judgment of conviction, and thereafter from time to time the complainant paid on account of his services and for disbursements the sum of eighty-five dollars. Respondent failed to take any steps in behalf of his client to perfect said appeal, and did not file any notice of appeal within the time fixed by law. He continued to receive money from his client after the time to appeal had expired, and did not disclose to her the fact of the expiration. The only service rendered by the respondent was to order the minutes of the trial in the Magistrate's Court, for which he paid about the sum of ten dollars. He has not paid back to his client any part of the moneys received, as aforesaid.

The evidence, as appears from the report of the learned official referee, may be summarized as follows: On February 13, 1923, the said woman, whose name it is not necessary to give in this opinion, consulted the respondent, according to her testimony, with a view to taking an appeal, claiming that she had been the victim of a frame-up and asserting that she had never before been arrested, notwithstanding that on her trial it had been claimed she had been convicted four times previously. After relating her story to the respondent, she testified he agreed to prosecute the appeal for

one hundred and fifty dollars. That respondent stated she would have to get the stenographer's minutes of the trial, and that they would not cost over twenty-five dollars; and on this occasion she paid the respondent ten dollars, as she understood on account of the total to be paid respondent for fees according to his agreement. Having attempted to get the minutes from the stenographer and being told that her attorney would have to procure them, she so reported to the respondent, and requested him to attend to that matter, to which he assented.

On March twentieth she sent respondent a money order for twenty-five dollars; on April tenth a check for another twenty-five dollars. She further testified that she telephoned respondent inquiring if he had gotten the minutes, to which he replied, " No," but assured her that everything would be all right; that after some conversation respondent insisted that he would have to be paid more money if she wanted him to do anything, and she thereupon promised to send respondent another twenty-five dollars on the twenty-second day of May, respondent again promising to procure the minutes. On this same interview respondent stated that he had previously told her that his fee would be two hundred and fifty dollars, to which she did not reply because she knew it meant a great deal to her if she could get vindicated. On May twenty-second she paid respondent twenty-five dollars more, making eighty-five dollars in all, and secured from him a receipt. After the receipt of sixty dollars respondent did procure the minutes. She further testified that on the ninth of April she was offered a discharge from probation and inquired by telephone of respondent whether she should accept same and was advised by him to do so. She also testified that respondent advised her during a telephone call some six weeks after receiving the last twenty-five dollars, that he had forgotten about the matter and that he would send the appeal right off. After waiting another week she wrote respondent asking him to hurry up as she was going away, and respondent told her to call the following day to sign the affidavit, when he would have everything ready for her. On calling the next day as instructed, respondent was not present, but a gentleman in his office said respondent's presence was not necessary. She read the affidavit and thereupon decided that respondent was either not interested in her case or was against it, and refused to sign the affidavit which she supposed to be the " appeal." After awaiting respondent's return to his office, she told respondent she would not sign anything like that; and after he had rectified some things in it, she signed the paper and left it with him upon his assurance that

**13**

First Department, July, 1924. [Vol. 210

he would bring it down to the court. She did not see respondent again, as she was waiting, because he had said it would take six weeks or two months before she could hear anything about the appeal. Later she called respondent up, and he got angry with her and said " You were supposed to give a $1,000 for this case. You haven't given only $85 so far." To which she replied that she would not give him another penny until she was sure he had really done something. Later she went to the Criminal Courts Buildings where Judge Kernochan's clerk looked up the records and found there had not been any appeal made; and on that same day, September 20, 1923, she made her complaint to the Bar Association.

The referee further states, as explaining the ultimate conclusion of her case, that it appears that in November, 1923, she wrote a letter to the Governor stating that she had been unjustly convicted. At the suggestion of the counsel to the Governor, District Attorney Banton investigated her case, reached the conclusion that she had been convicted on false testimony, so reported to the Governor, and she thereupon received a pardon.

Upon his own behalf the respondent testified that there was absolutely no conversation on February thirteenth about any appeal; that subsequent to March twentieth, and after he had received the minutes, he had told her that " we would arrange a fee of $250;" that he did not receive the minutes until the eighth or tenth of April, three or four weeks after he ordered them; that in a conversation with a deputy assistant district attorney he was informed that he could make the appeal any time; that later he consulted his office associates and found then that the only thing he could do was to make a motion for a new trial, whereupon he drew up papers for the motion before Judge Marsh, the committing magistrate, for a new hearing; that he was under the impression that he would have to have an affidavit from the woman to make this motion, and, therefore, had her sign the affidavit heretofore referred to; that by the time he got the minutes in his possession, the time to appeal had expired; that he was under the impression that he had ninety days for that purpose instead of sixty. Respondent further testified that he waited until October twentieth, until Magistrate Marsh returned to the Ninth District City Magistrate's Court, where the conviction had been obtained, to present his motion, which he thereupon did and same was denied.

The referee further states that in addition to the evidence already cited, the respondent upon the hearing made several important concessions, as follows: He conceded the receipt by him of the sum of eighty-five dollars. He also conceded that no motion was made

applying to the Court of Special Sessions for leave to appeal; that the time in which to appeal expired on April 6, 1923; that no part of the fees received by him had been returned by him, although demanded. The referee states that bearing in mind the above concessions, the investigation of her case by the district attorney and her subsequent pardon by the Governor, also taking into consideration the reasonable probabilities and the quality of her testimony, the referee had no hesitation in finding that on all disputed points her testimony must be accepted as controlling. To the contrary, the respondent's testimony, worth little enough upon direct as a valid explanation for his conduct, proved to be utterly worthless on cross-examination. The respondent's various contentions seem to be as follows:

1. That he was not hired to appeal; appeal was not mentioned at the first interview, in spite of his verified answer and other documentary evidence to the contrary.

2. That she paid him but $85 of the $250 he claims she agreed to pay, and, therefore, that excused him from doing anything for her.

3. That he was under the impression that he had ninety days in which to appeal instead of sixty, although he had been a deputy assistant district attorney for nearly four years and assigned to a City Magistrate's Court for a year and seven months.

4. That having failed to move to appeal by reason of his own ignorance or neglect, he did all that could then be expected of him by making another blunder, namely, awaiting the return of the committing magistrate to the district in which conviction was had, to move for a new trial on new evidence, possibly allowing a client, under certain circumstances, to serve his or her sentence in the meantime.

5. That having told his client to get the minutes, he was under no obligation to see that they were gotten in time, or to make his motion in the meantime and preserve his client's rights.

And the referee's conclusion is that the record shows conclusively that the client, suffering acutely under the sting of conviction for a most disgusting offense, sought the respondent for help and advice, paid him eighty-five dollars on account of an agreed retainer, and as a result not only received not the slightest beneficial result at respondent's hands, but even through his neglect lost her opportunity of appeal.

Upon the whole record, in the opinion of the referee, there is revealed most inexcusable and unconscionable neglect by respondent of his client's interests, and he finds the respondent guilty of misconduct as charged in the petition.

An examination of the whole record supports the conclusions of

the learned official referee, and we approve the same.    Many of the statements of the respondent made in his testimony before the referee were contradicted by previous statements made by him upon his preliminary examination before the grievance committee and in his letters.    The effort that he finally made to obtain a new trial, after the time in which to take an appeal had expired, was not made until after complaint had been made to the grievance committee and he had been notified thereof and a day set for a hearing.    The record is not a pleasant one.    A woman, smarting under the humiliation of an unjust conviction, obtained as it now appears upon false and perjured testimony, who had never been in any court in her life before her arrest in this case, employing a member of the bar for vindication and redress, had been met with neglect, indifference, ignorance and insult.    By his neglect, if it had not been for the exercise of the pardoning power by the Governor, she would have been branded for life as a convicted prostitute.    The privilege of practicing as an attorney and counselor at law carries with it the obligation of service and demands absolute fidelity to the interests of the client.    The respondent has failed to live up to the accepted standards of the profession, and he should be suspended from the practice thereof for the period of one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

Dowling, Smith, McAvoy and Martin, JJ., concur.

Respondent suspended for one year.    Settle order on notice.